Barker, J.
The contract of insurance was based upon a written application made by the insured and presented to the company, in which the applicant made representations as to the state of his health at that time and previous thereto. Such statements and representations were made by way of answer to written questions propounded on behalf of the company. In reply to an interrogatory the insured stated that he had never been insane. This answer was followed by an inquiry put in this form: “ Has either of the parents, brothers, sisters or other near relations of the party been afflicted with rheumatism, insanity or with pulmonary, scrofulous or any other constitutional disease hereditary in its character? ” This question was answered in the negative. The policy contained an express condition and agreement that all the answers, statements and representations should constitute a part of the contract, and were warranted by the insured to be true in all respects, and if they were not then the contract to be absolutely null and void.
One of the defenses interposed by the company is that Mrs. Branch, a sister of the insured, was, or had been at the time the application was made and the policy issued, insane, and on the trial gave evidence tending to prove the truth of the answer in this respect.
In the charge as given to the jury they were instructed in substance that if they found as a fact that Mrs. Branch was or had been at time of the application insane, and the same was of a temporary character only pioduced by physical causes at that time existing, it would not constitute a breach of any condition of the policy and thereby render it void; that to bring the case within the limits of the contract in this respect so as to constitute a defense and defeat a recovery, it must be made to appear that the insanity which afflicted *166 the sister of the insured was constitutional and hereditary in its nature and character.
In Peasley agt. Safety Deposit Life Insurance Company (15 Hun, 227) this court held, in a case in every respect similar to this question, that such was the true construction to be placed upon the question and answer. A similar interpretation was given to a like question and answer (Newton agt. The Mutual Benefit Life Insurance Company, reported in the same volume, p. 595). The defendant proved, and it was conceded by the plaintiff to be true, that the insured did dio by his own hand by the act of hanging himself by the neck. The contract of insurance contained a condition that if the insured should commit suicide or die by his own hand the policy should become null and void.
The plaintiff, with a view of meeting and avoiding the legal effect of this undisputed fact, sought to prove that the deceased did not voluntarily take his own life; that by reason of insanity he did not have sufficient mental capacity to understand the physical nature and consequences of his act, and that he was impelled to the'act by insanity, and in a legal sense he did not commit suicide or die by his own hands.
Among the witnesses called by the plaintiff on this question was the physician who attended the deceased during all the period of his alleged mental disturbance. The defendant objected to the evidence of this witness on the ground that he was not competent, by reason of the prohibition contained in section 834 of the Code, and the same was overruled and an exception was taken. The physician testified as to the physical and mental condition of the deceased, as he ascertained the same during his frequent professional visits, by conversations had with and communications made to him by the deceased, upon which the witness based and expressed the opinion that the deceased was laboring under mental delusion and was in fact insane.
As the evidence was produced for the purpose of protecting the estate of the deceased, and to uphold a contract made by *167 him in his hfetime with the defendant, the executors, as his personal representatives, possessed the right and privilege of releasing the physician from the statutory obligation of secrecy, and the defendant has no good ground for an exception.
In Staunton agt. Parker (19 Hun, 59) it was held that where the patient was dead the provisions of the statute could be waived by his representatives. The question there presented came upon a contest over the probate of the will of the deceased, and it was determined by the court, the heirs-at-law being the persons who succeeded to the real estate of the testator, they in their own behalf were competent to release the physician from all obligation imposed by the statute, and a mere stranger to the estate could not interpose the provisions of the statute as an objection to his competency.
In Eddington agt. Mutual Life Insurance Company (67 N. Y., 196), in discussing the statute, the court remarked that the seal which the law fixes upon such communications remains unless removed by the party himself or his legal representatives (See Parish Will Case, 25 N. Y., 9 ; Wharton on Evidence, sec. 591; 1 Greenleaf, sec. 243).
After the plaintiff had introduced all his evidence on the question of the insanity of the deceased, and had rested his case for the second time, the defendant called a witness to the stand who stated that he knew the decedent for many years, and was acquainted with his father and mother, and had an acquaintance with four of the uncles of the deceased on his mothers side and gave their names. He was then asked the following question: “Did you know of any peculiarity in either of these men ? ” The plaintiff’s counsel then interposed an objection, without stating the grounds on which the same was based. The defendant’s counsel then stated to the court that he offered the evidence as bearing upon the nature of the insanity of Hiram Gove, whose life was insured, and to show that the insanity with which he was afflicted was hereditary in its character. The case states that the offer was rejected, *168 upon the ground that the defendant’s case had been rested and that it had not been pleaded. To this ruling an exception was taken by the defendant.
The first reason assigned for rejecting the evidence is not well founded, for the reason prior to the time of this offer it would not have been pertinent for the defendant to give any evidence on the subject of the insanity of the insured. When the defendant first rested the case no question had been made as to the insanity of the deceased. The plaintiff raised that question and gave evidence tending to prove the insanity of the insured at the time he took his own life, with a view of avoiding the legal effect of the act, and the defendant sought to meet the position contended for by the plaintiff and to show the nature and degree of the insanity which afflicted the deceased. This made the evidence offered material and competent. The question was quite unimportant standing alone, yet as a preliminary inquiry it was proper and pertinent, and if the defendant had been allowed to proceed we may assume the examination would have disclosed facts bearing on the issue favorable to the defendant. The question was not objected to because it was in any respect improper or immaterial, or the witness was not qualified to testify on the subject, but the same was excluded for the reason the defendant was in no position to claim as a right, at that stage of the trial, the production of competent evidence on the question of the insanity of deceased.
As to the other grounds stated it seems to be equally without foundation, for it is set forth in the second paragraph of the answer that it was a condition of the contract, in case the insured should commit suicide or die by his own hand, the policy of insurance should become null and void, and it is also alleged he did commit suicide and did die by his own hand.
The exclusion of the evidence was plainly erroneous and manifestly detrimental to. the defendant, as it excluded material evidence upon the vital question in dispute. For this error a new trial should be granted.
*169 Smith, P. J.
I think the ease was well tried. As to the ruling which my brother Barker considers erroneous, I am of the opinion that the only line of proof which was open to the defendant at the stage of the trial when that ruling was made, was to disprove the alleged insanity of the deceased. The testimony offered and excluded did not tend in that direction, but on the contrary the offer assumed the. fact of the alleged insanity and related to the character of it only.
In this judge Hardin concurs.
The judgment and order affirmed with costs.